ALBERT B. SAMBAT (CSBN 236472)
ALEXIS J. LOEB (CSBN 269895)
SUSAN A. MUSSER (MOBN 63116)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
albert.sambat@usdoj.gov
Telephone: (415) 934-5300

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL MARR,<br>JAVIER SANCHEZ,<br>GREGORY CASORSO, and<br>VICTOR MARR,<br>　　　　　　　Defendants. | CASE NO. CR 4:14-00580 PJH<br><br>**UNITED STATES' MOTIONS *IN LIMINE***<br><br>Pretrial Conference:  August 31, 2016<br>Court:  Hon. Phyllis J. Hamilton<br>Trial Date:  September 19, 2016 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………………......................ii

INTRODUCTION ..........................................................................................................................2

I.    Motion in Limine No. 1 – The Court Should Exclude Evidence of Any Alleged Procompetitive Effects of Defendants' Illegal Bid-Rigging Conduct. ............................................1

    A.    The Reasonableness of or Justification for a Bid-Rigging Agreement is Not a Defense ........................................................................................................2

    B.    The Reasonableness of or Justification for a *Per Se* Bid-Rigging Offense Is Irrelevant and Encourages Jury Nullification .......................................................3

II.    Motion in Limine No. 2 – The Negligence or Acquiescence of the Auctioneers, Trustees, and Beneficiaries Is Inadmissible ..................................................................................5

III.    Motion in Limine No. 3 – Defendants Should Be Precluded from Using Prior Convictions of  Cooperating Witnesses for Impeachment. .............................................................8

    A.    Robert Kramer ............................................................................................................9

    B.    Hilton Wong....................................................................................................................9

    C.    Miguel De Sanz..........................................................................................................10

    D.    Michael Renquist ......................................................................................................10

    E.    Brian McKinzie............................................................................................................10

IV.    Motion in Limine No. 4 – Summary Charts of Roundsheets and Checks Are Admissible under Fed. R. Evid. 611(a) and 1006............................................................................13

V.    Motion in Limine No. 5 – Business and Public Records Are Admissible under Fed. R. Evid. 902 and 803......................................................................................................16

    A.    Auction Paperwork, Bank Records, and FedEx Shipping Records Are Properly Authenticated and Admissible Business Records................................................17

    B.    DMV Records and California Secretary of State Incorporation Records Are Properly Authenticated and Admissible as Public Records..............................20

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

*Brown v. Astrue*, 2008 WL 4279401 (E.D. Cal. Sept. 16, 2008)......................................... 11

4

*Crawford v. Washington*, 541 U.S. 36 (2003) ....................................................................... 18

5

*F.T.C. v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411 (1990)................................... 2, 3

6

*Kew v. Bank of America, N.A.*, Case No. H–11–2824, 2012 WL 1414978
    (S.D. Tex. Apr. 23, 2012) ................................................................................................. 19

7

*Merced v. McGrath*, 426 F.3d 1076 (9th Cir. 2005)............................................................... 4

8

*Northern Pac. Ry. Co. v. United States*, 356 U.S. 1, 514 (1958)............................................ 3

9

*Taylor v. Illinois*, 484 U.S. 400 (1988) ................................................................................... 4

10

*Turner v. United States*, 202 F.2d 523 (9th Cir. 1953) ......................................................... 17

11

*United States v. Apple, Inc.*, 791 F.3d 290 (2d Cir. 2015) ..................................................... 2

12

*United States v. Baker*, 10 F.3d 1374 (9th Cir. 1993)................................................. 13, 15, 16

13

*United States v. Bland*, 961 F.2d 123 (9th Cir. 1992) ........................................................... 17

14

*United States v. Blixt*, 548 F.3d 882 (9th Cir. 2008).......................................................... 4, 7

15

*United States v. Boulware*, 470 F.3d 931 (9th Cir. 2006) .................................................... 14

16

*United States v. Bray,* 139 F.3d. 1104 (6th Cir. 1998) ......................................................... 16

17

*United States v. Cameron*, 814 F.2d 403 (7th Cir. 1987) ..................................................... 11

18

*United States v. Chen*, 324 F.3d 1103 (9th Cir. 2003)............................................................ 7

19

*United States v. Childs*, 5 F.3d 1328 (9th Cir. 1993)........................................................... 17

20

*United States v. Coop. Theatres of Ohio*, 845 F.2d 1367 (6th Cir. 1988) ............................. 4

21

*United States v. Cuesta*, No. 1:06-CR-40 AWI (CVB Mag, P484375) 2007 WL 2729853
    (E.D. Cal. Sept. 19, 2007)................................................................................................ 20

22

*United States v. Edwards*, 156 Fed. Appx. 954 (9th Cir. 2005) .......................................... 12

23

*United States v. Funches*, 135 F.3d 1405 (11th Cir. 1998)..................................................... 5

24

*United States v. Gardner*, 611 F.2d 770 (9th Cir. 1980) ..................................................... 14

25

*United States v. Gen. Motors Corp.*, 384 U.S. 127 (1966) ..................................................... 2

26

*United States v. Glenn*, 667 F.2d 1269 (9th Cir. 1982) ....................................................... 10

27

*United States v. Gomez*, 772 F. Supp. 2d 1185 (C.D. Cal. 2011) ........................................ 11

28

*United States v. Green,* 428 F.3d 1131 (8th Cir. 2005) ................................................................ 16

*United States v. Jenkins*, 633 F.3d 788 (9th Cir. 2011) ................................................................. 7

*United States v. Johnson*, 460 F.2d 20 (9th Cir. 1972) ................................................................ 14

*United States v. Johnson*, 594 F.2d 1253 (9th Cir. 1979) ............................................................ 15

*United States v. Keltner,* 675 F.2d 602 (4th Cir. 1982) ............................................................... 14

*United States v. Kuzmenko,* No. 2:11-cr-210 (Dkt. 360) (E.D. Cal. Jan. 7, 2015) ...................... 8

*United States v. Kuzmenko*, No. 2:12-cr-00062 JAM, 2014 WL 1334003
     (E.D. Cal. April 2, 2014) ...................................................................................................... 20

*United States v. Lemire*, 720 F.2d 1327 (D.C. Cir. 1983) ........................................................... 15

*United States v. Licavoli*, 604 F.2d 613 (9th Cir. 1979) ............................................................. 18

*United States v. Lindsey*, No. 14-4004, 2016 WL 3536659 (9th Cir. June 28, 2016) .............. 5, 6, 7, 8

*United States v. MMR Corp. (LA)*, 907 F.2d 489 (5th Cir. 1990) ................................................ 2

*United States v. Pollack*, 417 F.2d 240 (5th Cir. 1969) .............................................................. 15

*United States v. Portillo*, 699 F.2d 461 (9th Cir. 1982) ............................................................... 8

*United States v. Powell*, 955 F.2d 1206 (9th Cir. 1991) ............................................................... 4

*United States v. Rasheed*, 663 F.2d 843 (9th Cir. 1981) .............................................................. 7

*United States v. Ray*, 930 F.2d 1368 (9th Cir. 1991) ................................................................. 17

*United States v. Rizk*, 660 F.3d 1125 (9th Cir. 2011) ................................................................. 15

*United States v. Rosenthal*, 266 F. Supp. 2d 1068 (N.D. Cal. 2003) ........................................... 5

*United States v. Salcedo*, No. 2:11-cr-353 (Dkt. 147, 176) (E.D. Cal. June 8, 2015) ................ 8

*United States v. Scales*, 594 F.2d 558 (6th Cir. 1979) ............................................................... 14

*United States v. Scarmazzo*, 554 F. Supp. 2d 1102 (E.D. Cal. 2008) ..................................... 4, 5

*United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150 (1940) ................................................... 2

*United States v. Topco Assocs.*, 405 U.S. 596 (1972) ................................................................... 2

*United States v. Towns*, 718 F.3d 404 (5th Cir. 2013) ............................................................... 18

*United States v. Wallace*, 848 F.2d 1464 (9th Cir. 1988) ............................................................ 9

*United States v. Wood*, 943 F.2d 1048 (9th Cir. 1991) .............................................................. 15

*United States v. Yeley-Davis*, 632 F.3d 673 (10th Cir. 2011) .................................................... 18

**STATUTES**

15 U.S.C. Section 1 ................................................................................................................... 3

Cal. Pen. Code § 415 ................................................................................................................. 9

Cal. Pen. Code § 602 ............................................................................................................... 10

Cal. Pen. Code § 488 ................................................................................................................. 9

Cal. Pen. Code § 490 ................................................................................................................. 9

Cal. Vehicle Code § 14601 ....................................................................................................... 10

Cal. Vehicle Code § 23103 ....................................................................................................... 10

Sherman Act ............................................................................................................................... 2

**OTHER AUTHORITIES**

ABA Model Jury Instructions in Criminal Antitrust Cases (2009) ............................................ 3

Ninth Circuit Pattern Jury Instruction 8.121 ............................................................................. 7

Notes of Advisory Committee on Rules – 1990 Amendment ................................................... 12

Notes of Committee on the Judiciary, Senate Report No. 93-1277 ........................................... 9

*Weinstein's Federal Evidence,* § 1006.04 (Joseph M. McLaughlin, ed., 2d ed. 2008) ........................... 15

**RULES**

Federal Rules of Evidence 401 .................................................................................................. 6

Federal Rule of Evidence 402 ................................................................................................. 3, 6

Federal Rule of Evidence 403 ................................................................................... 4, 6, 8, 11, 12

Federal Rule of Evidence 609 ................................................................................................ 9, 12

Federal Rule of Evidence Rule 609(a)(1) ................................................................................... 9

Federal Rule of Evidence 609(a)(1)(A) ................................................................................. 8, 11

Federal Rule of Evidence 609(a)(2) ........................................................................................... 9

Federal Rule of Evidence 609(b) ........................................................................................ 8, 9, 11

Federal Rule of Evidence 609(b)(1)-(2) ...................................................................................... 8

Federal Rule of Evidence 611 ..................................................................................................... 1

Federal Rule of Evidence 611(a) ............................................................................... 13, 14, 15, 16

Federal Rule of Evidence 803 ................................................................................................. 1, 16

Federal Rule of Evidence 803(6) .................................................................................... 16, 17, 19, 20

Federal Rule of Evidence 803(6)(D) ........................................................................................... 18

Federal Rule of Evidence 803(8) ........................................................................................ 16, 20

Federal Rule of Evidence 803(15) ...................................................................................... 16, 19

Federal Rule of Evidence 902 ............................................................................................... 1, 16

Federal Rule of Evidence 902(1) ................................................................................................ 20

Federal Rule of Evidence 902(4) ........................................................................................ 16, 20

Federal Rule of Evidence 902(11) ........................................................................... 16, 17, 18, 19

Federal Rule of Evidence 1006 ................................................................................. 1, 13, 15, 16

# INTRODUCTION

The United States respectfully moves this Court for an order on the motions *in limine* described below:

    (1) Precluding defendants from offering evidence or argument concerning effects of or justifications for bid rigging.

    (2) Precluding defendants from offering evidence or argument that the auctioneers, trustee companies, or beneficiaries were negligent, acquiescent, willfully blind to, or otherwise to blame for the charged conduct.

    (3) Precluding defendants from offering evidence or argument regarding prior convictions and certain other acts of some government witnesses.

    (4) Admitting certain summary charts pursuant to Federal Rules of Evidence 611 and 1006, subject to the underlying evidence being admitted at trial.

    (5) Admitting certain business and public records pursuant to Federal Rules of Evidence 902 and 803.

## I.    Motion in Limine No. 1 – The Court Should Exclude Evidence of Any Alleged Procompetitive Effects of Defendants' Illegal Bid-Rigging Conduct.

The United States moves *in limine* to prohibit defendants from introducing any evidence or argument that their agreements with their competitors to rig bids were reasonable or that there were economic or business justifications for those agreements. The introduction of such evidence is improper, as it is not a defense to conduct that is *per se* unlawful under the Sherman Act, is not relevant to the facts at issue at trial, and serves only to facilitate jury nullification. Defendants' evidence or arguments may come in many forms, such as: (1) rigging bids was necessary to compete and obtain property at foreclosure auctions; (2) rigging bids was standard practice; (3) rigging bids was necessary to offset the alleged competitive power of the banks (the owners of the mortgages of the houses being sold at auction); (4) rigging bids was necessary to allow the bidders time to research the property; (5) the prices for properties and profits made from properties sold at foreclosure auctions were fair, reasonable, competitive, or rose over time (despite the bid-rigging conspiracy).

//

//

//

## A.      The Reasonableness of or Justification for a Bid-Rigging Agreement is Not a Defense

The reasonableness of or justification for a bid-rigging agreement is not a defense because bid rigging is *per se* unlawful.  As this Court explained in its June 21, 2016 order (Dkt. No. 66), "[t]he indictment charges defendants with a conspiracy involving an agreement not to compete at public foreclosure auctions, designating which conspirator would win selected properties at the public auction, and holding secondary private auctions to determine the conspirator who would be awarded the selected properties and to determine the payoff amounts for those agreeing not to compete."  *Id.* ¶ 3.  Finding no reason to deviate from a hundred years of established precedent, this Court held that the indictment alleged a "bid rigging arrangement mandating per se treatment."  *Id.*

Once the existence of a *per se* illegal agreement is established, justifications for the agreement are not a defense.  *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 221-22 (1940).  Specifically, evidence or argument that a defendants' anticompetitive agreements were necessary to offset a competitor's market power or to compete effectively is not a legitimate defense to a *per se* violation of the Sherman Act.  *United States v. Topco Assocs.*, 405 U.S. 596, 610 (1972) (citing *United States v. Gen. Motors Corp.*, 384 U.S. 127, 146-47 (1966)) (explaining that the Supreme Court has "consistently rejected the notion that naked restraints of trade are to be tolerated because they are well intended or because they are allegedly developed to increase competition"); *Socony-Vacuum Oil Co.*, 310 U.S. at 218 ("[P]rice-fixing agreements are unlawful per se under the Sherman Act and no showing of so-called competitive abuses or evils which those agreements were designed to eliminate or alleviate may be interposed as a defense."); *United States v. Apple, Inc.*, 791 F.3d 290, 298 (2d Cir. 2015) (rejecting the theory that "the presence of a strong competitor justifies a horizontal price-fixing conspiracy" because it "endorses a concept of marketplace vigilantism that is wholly foreign to the antitrust laws.").  Likewise, the reasonableness of the price of a home sold at a foreclosure auction is not a defense to a *per se* unlawful agreement.  *F.T.C. v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 424 (1990) ("it is no excuse that the prices fixed themselves are reasonable"); *United States v. MMR Corp. (LA)*, 907 F.2d 489, 498 (5th Cir. 1990) ("If there was an agreement . . . it is no defense that the resulting costs and profit of the job were 'reasonable.'").

One form that these impermissible arguments may take is expert testimony on the purported positive (upward) effects of defendants' agreement not to compete on prices of homes sold at foreclosure auctions.  Defendants submitted a declaration making such arguments in support of their motion to adjudicate under the rule of reason.  Decl. of Jeffrey S. Andrien in Supp. of Michael Marr's Mot. to Adj. the Govt.'s Sherman Act Allegations Pursuant to the R. of Reason, Dkt. 66-1 ("Andrien Decl.").  In the declaration, Dr. Andrien opined that the prices paid by third parties at foreclosure auctions were higher before the FBI investigation went overt than after.  *Id.* at 3.  The defendants then argued in their motion that this alleged price decrease occurring after the FBI's investigation went overt justified defendants' anticompetitive agreements.  Mot. to Adj. Sherman Act Allegation Pursuant to the R. of Reason at 14.

This argument is not relevant to any element of a charge of violation of 15 U.S.C. Section 1, nor is it a viable defense.[1]  *See, e.g.*, *Superior Court Trial Lawyers Ass'n*, 493 U.S. at 424.  As the ABA Model Criminal Antitrust Jury Instruction for Per Se Violations of the Antitrust Laws explains:

> [I]f you find that the government has met its burden with respect to each of the elements of the charged offense, you need not be concerned with whether the agreement was reasonable or unreasonable, the justifications for the agreement, or the harm, if any, done by it.  It is not a defense that the parties may have acted with good motives, or may have thought that what they were doing was legal, or that the conspiracy may have had some good results.  If there was, in fact, a conspiracy as charged in the indictment, it was illegal.

ABA Model Jury Instructions in Criminal Antitrust Cases at 54-55 (2009).  Arguments such as Dr. Andrien's that attempt to justify the illegal agreements with rationalizations of positive effects are not a defense to bid rigging.  The agreement is the crime, regardless of its effects.  *See, e.g., Northern Pac. Ry. Co. v. United States*, 356 U.S. 1, 514, 518 (1958).

## B.   The Reasonableness of or Justification for a *Per Se* Bid-Rigging Offense Is Irrelevant and Encourages Jury Nullification

Evidence that is not relevant is not admissible.  Fed. R. Evid. 402.  Evidence is also inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice or confusion of the

---

[1]   While defense has not indicated that they will be calling Dr. Andrien as an expert, if they did the government would object to his testimony as not relevant for the reason stated in this motion.

1   issues.  Fed. R. Evid. 403.  The only issues for the jury to decide for the bid-rigging charges is whether

2   there were agreements to rig bids, whether defendants knowingly participated in the agreements, and

3   whether their activities were in the flow of interstate commerce.  Evidence that the agreement was

4   reasonable or otherwise justifiable is not probative of the existence of the agreement, whether the

5   defendants knowingly joined the agreement or whether the agreement was in the flow of interstate

6   commerce.  Evidence of procompetitive justifications, therefore, would not be probative of any element

7   of the crime nor, as explained in the section above, are these alleged justifications probative of a legal

8   defense.  Instead, these justifications would only serve to encourage jury nullification.

9          The Court should preclude evidence and arguments aimed at encouraging jury nullification

10   because such arguments or evidence are irrelevant to the ultimate issue of defendants' guilt or innocence

11   and will only encourage the jury to abdicate its duty to follow the law as stated by the judge.  The danger

12   in this case is that a jury may be misled into believing that defendants are not criminally liable because

13   the proffered justifications may appear reasonable.  This would effectively encourage jurors to ignore

14   the law.  The *per se* rule was specifically designed to avoid such confusion.  *See United States v. Coop.*

15   *Theatres of Ohio*, 845 F.2d 1367, 1371-73 (6th Cir. 1988) (explaining that questions of reasonableness

16   are what the "*per se* rule is designed to avoid").

17          A defendant "does not have an unfettered right to offer testimony that is . . . inadmissible under

18   standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988).  "[N]either a Defendant nor

19   his attorney has the right to present evidence that is irrelevant to a legal defense to, or an element of, the

20   crime charged[:] [v]erdicts must be based on the law and evidence, not on jury nullification." *United*

21   *States v. Scarmazzo*, 554 F. Supp. 2d 1102, 1109 (E.D. Cal. 2008).  *See, e.g.*, *United States v. Blixt*, 548

22   F.3d 882, 890 (9th Cir. 2008) (holding that "the district court, exercising considerable restraint in the

23   face of blatant jury nullification arguments, properly instructed the jury to disregard counsel's

24   statements"); *Merced v. McGrath*, 426 F.3d 1076, 1079 (9th Cir. 2005) (holding that "while jurors have

25   the power to nullify a verdict, they have no right to do so" and that "courts manifestly do not have a duty

26   to ensure a jury's free exercise of this power") (citations omitted); *United States v. Powell*, 955 F.2d

27   1206, 1213 (9th Cir. 1991) (affirming the district court's refusal to give a jury instruction permitting jury

28   nullification).

1    "[E]vidence which is otherwise inadmissible does not become admissible in order to facilitate

2    jury nullification."  *United States v. Rosenthal*, 266 F. Supp. 2d 1068, 1075 (N.D. Cal. 2003), *rev'd on*

3    *other grounds*, 454 F.3d 943, 947 (9th Cir. 2006)[2]; *see also United States v. Funches*, 135 F.3d 1405,

4    1409 (11th Cir. 1998) (finding no reversible error when the trial court denies admission of evidence that

5    would support nullification, "even if the evidence might have encouraged the jury to disregard the law

6    and to acquit the defendant"); *Scarmazzo*, 554 F. Supp. 2d at 1108 ("It is appropriate to exclude

7    evidence and argument" on jury nullification).  As explained above, evidence of the alleged

8    procompetitive benefits of defendants' bid rigging is not probative of any element of the offense or a

9    permitted justification.  Procompetitive evidence is extremely prejudicial because it encourages the jury

10   to decide the case on legally irrelevant facts and encourages the jury to disregard the law.  Accordingly,

11   evidence or argument concerning these effects should not be presented to the jury.

12   **II.    Motion in Limine No. 2 – The Negligence or Acquiescence of the Auctioneers, Trustees, and**

13   **         Beneficiaries Is Inadmissible**

14         The United States moves to exclude all argument or evidence suggesting that the victims or their

15   representatives were culpable, negligent, or acquiescent in the charged conduct.  The Ninth Circuit's

16   recent decision in *United States v. Lindsey*, No. 14-4004, 2016 WL 3536659 (9th Cir. June 28, 2016)

17   makes clear that such arguments have no place at trial.

18          The victims in this case are the beneficiaries of the foreclosed properties sold at auction:

19   typically, banks that owned the mortgages on the properties and, ultimately, the homeowners whose

20   properties were in foreclosure.  Trustee companies oversaw the sale of the foreclosed properties on the

21   beneficiaries' behalf, received the auction paperwork (where defendants made false and misleading

22   statements), ultimately disbursed the funds and transferred title to the property.  They also hired posting

23   companies to provide auctioneers to conduct the public auctions.

24         The government anticipates that defendants may raise the following arguments to excuse their

25   conduct: (1) that the auctioneers who ran the auctions were aware of agreements to refrain from bidding,

26

27   [2]      "The district court issued a thorough and well-reasoned order articulating its basis for denying
     one of the evidentiary objections, the prosecutorial-misconduct claim, and the jury-instructions claim
28   and ruled on the other evidentiary issue and the *Franks* hearing orally.  We agree with the district court's
     written and oral analysis of those issues and adopt its reasoning in whole."  *Rosenthal*, 454 F.3d at 948.

1   rounds, and/or payoffs, and allowed the defendants to make false statements on auction paperwork; (2)

2   that the trustee companies were negligent in monitoring the auctions or detecting false or misleading

3   statements on the auction paperwork; (3) that the banks did not care about maximizing their earnings

4   from the foreclosure auctions; or (4) that the banks were culpable for the defendants' conduct because

5   they "stymied a competitive foreclosure auction process by deciding to withhold significant information

6   about auctioned properties."  (Defs' Mot. to Adjudicate Sherman Act Allegations Pursuant to the Rule

7   of Reason at 1) (Dkt 66).  In summary, defendants may seek to "blame the banks."  None of these

8   arguments are proper, and all risk inviting jury confusion and nullification.  The Court should thus

9   exclude them as irrelevant under Federal Rules of Evidence 401 and 402 and as unfairly prejudicial

10   under Rule 403.

11        The arguments outlined above are improper because the concept of contributory negligence, or

12   victim acquiescence, has no place in a criminal fraud prosecution.  It neither constitutes an affirmative

13   defense to fraud nor affects the government's proof of materiality as an element of fraud.

14        The Ninth Circuit held recently that a "victim's negligence is not a defense to [wire fraud]."[3]

15   *Lindsey*, 2016 WL 3536659, at *4.  Affirming the district court's decision to exclude evidence of the

16   negligence of lenders who approved fraudulent loan applications, the panel observed, "[t]wo wrongs do

17   not make a right, and a lender's negligence, or even intentional disregard, cannot excuse another's

18   criminal fraud."  *Id.* at *3.  Evidence of a lender's negligence (or even "intentional disregard") in

19   verifying loan information was therefore "inadmissible as a defense against charges of mortgage fraud."

20   *Id.* at *1.  "A perpetrator of fraud is no less guilty of fraud because his victim is also guilty of

21   negligence."  *Id.* at *4 (citation omitted).

22        Defendants may claim that the issues of auctioneer, trustee, or beneficiary culpability or

23   negligence demonstrate that the false statements at issue were not material (i.e., if a victim knew about

24   the false statements, no one was actually deceived, and the false statements could not have been that

25   important).  This argument is also wrong as a matter of law, as *Lindsey* recently recognized.

26   //

27   _____

[3]        The elements of mail and wire fraud are the same except one requires a mailing in furtherance of
28   the conspiracy and one requires a wire in furtherance of the conspiracy.  *United States v. Lothian*, 976
     F.2d 1257, 1262-63 (9th Cir. 1992).

1    Materiality is objectively measured as whether the statements "had a natural tendency to

2    influence, or were capable of influencing, a person to part with money or property."  Ninth Circuit

3    Pattern Jury Instruction 8.121.  As *Lindsey* summarizes:

> The element of materiality is evaluated under an objective test, in which
> the Court must examine the intrinsic capabilities of the false statement
> itself, rather than the possibility of the actual attainment of its end.  To be
> material, the statement need have only the propensity or capacity to
> influence or affect the lender's decision. . . . In sum, the government does
> not have to prove actual reliance upon the defendant's misrepresentations
> to satisfy the element of materiality.

9    *Lindsey*, 2016 WL 3536559 at *3 (citations omitted); *see also United States v. Chen*, 324 F.3d 1103,

10   1104-05 (9th Cir. 2003) (rejecting the notion that the government had to prove that the misrepresentation

11   "*would more likely than not* have produced an erroneous decision") (emphasis in original); *United States*

12   *v. Rasheed*, 663 F.2d 843, 850 (9th Cir. 1981) ("The mail fraud statute does not require proof that

13   anyone has been defrauded").  The law does not invite a subjective inquiry into whether a particular

14   person or entity relied on the statements.

15       *Lindsey* further held that "when a lender requests specific information in its loan applications,

16   that information is objectively material as a matter of law, regardless of the lenders' policies or practices

17   with respect to use of that information."  *Lindsey*, 2016 WL 3536659, at *1.  Relatedly, "the conduct of

18   the lender cannot provide an effective defense based on alleged lack of materiality."  *Id.* at *4.

19       Applied to this case, *Lindsey* means that evidence of the auctioneers', trustees', or banks'

20   negligence is no defense.  The jury may find defendants guilty regardless of whether the banks or the

21   trustee companies actually reviewed or relied upon the auction paperwork containing the false

22   statements.  The issue of whether the auctioneers, trustees, or beneficiaries were actually deceived by

23   false statements is irrelevant.   The Ninth Circuit has previously recognized that "a misrepresentation

24   may be material without inducing any actual reliance.  What is important is the intent of the person

25   making the statement – that the statement be in furtherance of some fraudulent purpose.  *United States*

26   *v. Blixt*, 548 F.3d at 889 (citation omitted).  Accordingly, "[t]here is no requirement that the statements

27   actually influence those to whom they are addressed."  *United States v. Jenkins*, 633 F.3d 788, 802 n.3

28   (9th Cir. 2011).

1    Moreover, arguments that the trustees, banks, or auctioneers didn't really care about defendants'

2   criminal conduct are also improper because they introduce the issue of the effect of defendants' conduct

3   on the intended victims and their representatives.  As this Court has recognized, the government need

4   not prove anticompetitive effects here, where it has alleged conduct that is *per se* illegal.  Nor should the

5   defense be allowed to turn the trial into a referendum on banks' lending practices, auctioneer culpability,

6   trustee negligence, or the financial crisis.

7    District courts in this circuit have granted motions *in limine* to keep out similar "blame the

8   banks" defenses, precluding defendants from arguing that the defrauded institutions did not rely on false

9   statements in paperwork.  *See, e.g., United States v. Kuzmenko,* No. 2:11-cr-210 (Dkt. 360) (E.D. Cal.

10   Jan. 7, 2015) (granting United States' motion in limine no. 3 to exclude evidence of lender fault or

11   negligence); *United States v. Salcedo*, No. 2:11-cr-353 (Dkt. 147, 176) (E.D. Cal. June 8, 2015)

12   (granting motion in limine to exclude evidence or argument of lender fault or negligence).  As *Lindsey*

13   recently settled, the Court should do the same here.

14   **III.    Motion in Limine No. 3 – Defendants Should Be Precluded from Using Prior Convictions of
         Cooperating Witnesses for Impeachment**

15

16    The United States moves for an *in limine* ruling to exclude any evidence, either documentary or

17   testimonial, or any argument by defense counsel to impeach any witness by introducing evidence of

18   conviction of a crime.

19    The  Federal Rules of Evidence allow felony convictions to be used to impeach a witness in two

20   circumstances: (1) 609(a)(1)(A) allows admission of a nondefendant witness's prior felony conviction as

21   long as the probative value of the evidence outweighs the prejudicial effect (Federal Rule of Evidence

22   403) and (2) Federal Rule of Evidence 609(b) allows the use of felony convictions that are more than ten

23   years old only if the court makes specific findings that the probative value "substantially outweighs" its

24   prejudicial effect, and the proponent gives advance notice of its intent to use this evidence.  Fed. R.

25   Evid. 609(b)(1)-(2); *United States v. Portillo*, 699 F.2d 461, 463-64 (9th Cir. 1982).  "Convictions over

26   //

27   //

28   //

1   10 years old will be admitted very rarely and only in exceptional circumstances." Fed. R. Evid. 609, Notes

2   of Committee on the Judiciary, Senate Report No. 93-1277.

3   The ten-year calculation is based on the date of conviction or the individual's release from

4   confinement, whichever is later.  Fed. R. Evid. 609(b).  If a witness is subsequently incarcerated due to a

5   parole or probation revocation, that incarceration may toll the ten-year limit of Rule 609(b) in limited

6   circumstances.  *United States v. Wallace*, 848 F.2d 1464, 1472 (9th Cir. 1988).  The revocation must be

7   due to a substantive rather than a technical violation, and the violation must be "substantively related or

8   parallel to the original conviction."  *Id.*  To the best of the government's knowledge, five of the

9   government's anticipated witnesses – Robert Kramer, Hilton Wong, Miguel De Sanz, Michael Renquist,

10  and Brian McKinzie – have prior convictions.  None of these witnesses have been convicted of a crime

11  that has an element requiring a "dishonest act or false statement."  Fed. R. Evid. 609(a)(2).  Only one

12  witness, Brian McKinzie, has been convicted of a felony within the last ten years.  The government

13  turned over the criminal history reports in its possession for each potential witness in discovery on July

14  21, 2016. Declaration of Albert B. Sambat ("Sambat Decl.") ¶ 3.  The defendants have not provided

15  notice of intent to offer any convictions pursuant to Rule 609(b).

16  **A.      Robert Kramer**

17  Kramer was convicted of disturbing the peace in 1998, specifically with respect to fighting,

18  noise, or offensive words.  He was sentenced to two days of jail and 24 months of probation.  This

19  conviction is presumptively inadmissible because more than 10 years have passed since Kramer's

20  conviction.  Moreover, the conviction's maximum penalty is 90 days of jail time, far less than the one-

21  year requirement for admissibility under Rule 609(a)(1).  *See* Cal. Pen. Code § 415.  In addition,

22  disturbing the peace does not involve a dishonest act or false statement, and the prejudicial effect would

23  far outweigh any probative value.  *Id.*  Thus, Kramer's prior conviction is inadmissible.

24  **B.      Hilton Wong**

25  In 1999, Hilton Wong was convicted of misdemeanor petty theft and was sentenced to two days

26  in jail and one year of probation.  This conviction is over 10 years old, does not carry a maximum

27  penalty of more than one year, and does not involve dishonesty or false statement; it is, therefore,

28  inadmissible.  *See* Cal. Pen. Code §§ 488, 490; *see also United States v. Glenn*, 667 F.2d 1269, 1273

(9th Cir. 1982) ("generally, crimes of violence, theft crimes, and crimes of stealth do not involve dishonesty or false statement" within the meaning of rule 609(a)(2).").  This seventeen-year-old misdemeanor has essentially no probative value.

### C.      Miguel De Sanz

De Sanz was convicted in 1977 of a misdemeanor—driving on private property.  This nearly 40-year-old conviction does not carry a maximum penalty of more than one year, and the elements of the crime do not require proving a dishonest act or false statement.  *See* Cal. Pen. Code § 602.  It offers zero probative value and is, therefore, inadmissible.

### D.      Michael Renquist

Renquist has three prior misdemeanor convictions, which are all more than 35 years old. Renquist's prior criminal history is summarized in the chart below.

| Date | Location | Offense | Type | Sentence |
|------|----------|---------|------|----------|
| 2/24/1975 | San Leandro, CA | Disturbing the peace | Misdemeanor | Convicted, no sentence |
| 2/16/1978 | Oakland, CA | Driving with suspended license | Misdemeanor | 5 days jail, 12 months probation |
| 3/09/1978 | Hayward, CA | Reckless Driving | Misdemeanor | 10 days jail, 1 year probation |

All three convictions are far outside of the ten-year limit imposed under Rule 609.  Disturbing the peace carries a maximum penalty of 90 days in jail.  Similarly, reckless driving carries a maximum penalty of 90 days jail, and driving with a suspended license carries a maximum penalty of six months jail.  *See* Cal. Vehicle Code §§ 23103, 14601.  Like the other crimes discussed above, none of these crimes involve dishonesty or false statement, and all have zero (or close to zero) probative value.  *See id.*

### E.      Brian McKinzie

McKinzie has prior DUI convictions dating back to the 1990s and one gun possession conviction, which is over a decade old.  McKinzie's prior criminal history is summarized in the following chart:

//

| Date | Location | Offense | Type | Sentence |
|---|---|---|---|---|
| 6/1/1993 | Hayward, CA | Possession of an Assault Weapon | Felony | 3 years probation; firearms restriction |
| 3/18/1996 | Oakland, CA | DUI with BAC over .08% | Misdemeanor | 2 days jail |
| 12/26/2001 | Oakland, CA | DUI of Alcohol/Drugs | Misdemeanor | 2 days jail |
| 10/18/2004 | Oakland, CA | Felon in Possession of a Firearm | Felony | 1 day jail, 5 years probation 5/5/2008 probation modified to additional 257 days jail |
| 6/25/2007 | Oakland, CA | DUI with BAC over .08% and with priors | Felony | 5 years probation |
| 6/26/2007 | Stockton, CA | DUI with BAC over .08% and with priors | Misdemeanor | 16 months jail |
| 3/6/2008 | San Jose, CA | Driving with a suspended license | Misdemeanor | 10 days jail |
| 7/21/2008 | Hayward, CA | DUI with BAC over .08% | Felony | 9 months jail |
| 8/11/2009 | Woodland, CA | Use of a Watercraft with a BAC over .08% | Misdemeanor | 12 months probation |
| 4/27/2012 | Oakland, CA | DUI with priors | Felony | 50 days jail; Probation revoked 2/17/2015; resentenced to 180 days jail |

The Court should exclude all of the above convictions.  None of the prior criminal convictions are crimes of dishonesty.  *See United States v. Cameron*, 814 F.2d 403, 405 (7th Cir. 1987) (stating that possession of a weapon is generally not considered a crime of dishonesty) (citations omitted); *Brown v. Astrue*, 2008 WL 4279401 at *6 (E.D. Cal. Sept. 16, 2008) (stating that DUI convictions have little bearing on a person's credibility).  Thus, they are only admissible if (1) they are felonies that are less than ten years old and pass Rule 403 balancing (Rule 609(a)(1)(A)); or (2) the probative value substantially outweighs the prejudice (and defendants provide written notice of intent to use the convictions) (Rule 609(b)).

McKinzie's 1993, 1996, and 2001 convictions are all over 10 years old (and two are misdemeanors).  *See* Fed. R. Evid. 609(b); *United States v. Gomez*, 772 F. Supp. 2d 1185, 1195 (C.D. Cal. 2011) (convictions more than ten years old "presumptively remote").  Among the convictions from the past ten years, those from June 26, 2007, March 2008, and 2009 are all misdemeanors.

//

1    These convictions offer little probative value to McKinzie's testimony, especially because they

2    do not relate to dishonesty, and the potential prejudice (particularly against the crime of driving drunk)

3    easily outweighs any probative value.  The remaining convictions (McKinzie's felony DUI convictions

4    from 2007, 2008, and 2012, and his felon-in-possession conviction from 2004) are inadmissible under

5    Rule 403.[4]

6    Defendants may argue that these convictions are probative to McKinzie's ability to perceive and

7    recall events at the courthouse steps.  This argument only makes sense, however, if the DUIs showed

8    that McKinzie was drunk during the events to which he will testify: a three-year course of conduct at the

9    public foreclosure auctions, involving hundreds of instances of bid rigging.  They do not.  A DUI

10   conviction is not relevant to McKinzie's ability to perceive during the public auctions and should not be

11   admitted to prove his perception or lack of perception at the auctions.

12   Courts have found DUI convictions irrelevant.  *United States v. Edwards*, 156 Fed. Appx. 954,

13   956 (9th Cir. 2005) ("officers' misdemeanor DUI convictions are simply irrelevant to their credibility").

14   While a felony conviction is generally probative of the witness's credibility, the nature of this conviction

15   is substantially similar to a misdemeanor DUI conviction and similarly has very little relevance to

16   McKinzie's credibility.  A felony conviction is highly prejudicial in that there is "danger that prior

17   convictions will be misused as character evidence."  Notes of Advisory Committee on Rules – 1990

18   Amendment.  Weighing the minimal probative value of McKinzie's testimony against its highly

19   prejudicial value mandates exclusion of McKinzie's felony DUI convictions.  Fed. R. Evid. 403.

20   Similarly McKinzie's conviction for felon in possession has little, if any, probative value.  The

21   underlying conviction is from 2004.  In 2008 his probation was revoked, bringing his conviction within

22   the ten-year period contemplated by Rule 609.  However, almost fourteen years have passed since his

23   conviction and almost eight years since his probation violation, making this fairly remote in time and

24   lessening any alleged probative value.  Additionally, possession of a weapon has little probative value to

25   //

26   //

27

28
_____

[4]     In 2004, McKinzie was convicted of felon in possession of a firearm.  However, the ten-year limit was tolled because on May 5, 2008, his probation was revoked and he was sentenced to an additional 257 days in jail.

1    McKinzie's credibility. Weighing the minimal probative value against its highly prejudicial value

2    requires exclusion of McKinzie's felon-in-possession conviction.

3    **IV.     Motion in Limine No. 4 – Summary Charts of Roundsheets and Checks Are Admissible under Fed. R. Evid. 611(a) and 1006**

4

5         The United States intends to introduce summary charts and testimonial aids, including the

6    attached summary charts, pursuant to Federal Rule of Evidence 611(a).  *See* Sambat Decl. ¶¶ 8-12;

7    Sambat Decl. Attachments A through E.  The attached charts summarize numerous exhibits that the

8    government intends to admit at trial and will be used to facilitate witness testimony about the underlying

9    admitted exhibits.  The charts will help the jury organize and understand the evidence that the

10   government plans to introduce.

11        The charts that the government seeks to admit summarize voluminous handwritten round sheets

12   that employees of defendant Michael Marr used to track bids in the rounds (private secondary auctions

13   that defendants used to determine payoffs for bid rigging and decide who would take title to the bid-

14   rigged properties).  They will also summarize the checks that were paid to and from the defendants and

15   the cooperating witnesses for the bid-rigging conspiracy and fraud schemes.  Another summary chart

16   will identify the Trustee Sale Number ("TS Number"), date of sale, county, relevant exhibit number, and

17   address for certain properties at issue.

18        Under Ninth Circuit law, it is within this Court's discretion to permit the jury to use these charts

19   during their deliberations.  Given that the attached charts will aid in the jury's examination of evidence,

20   this Court should permit the jury's use of the attached summaries during deliberations.  Should any of

21   the evidence being summarized in the charts not be admitted at trial, the government will amend the

22   charts so that they reflect only the evidence actually in the record.

23        Rule 611(a) authorizes a court to permit the introduction of summary charts of admitted evidence

24   at trial through its power to "exercise reasonable control over the mode . . . of . . . presenting evidence so

25   as to: (1) make those procedures effective for determining the truth . . . [and] (2) avoid wasting time."

26   Fed. R. Evid. 611(a); *United States v. Baker*, 10 F.3d 1374, 1411-12 (9th Cir. 1993), *overruled on other*

27   *grounds by United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000).  In addition to allowing use of

28   summary charts during trial, it is within the discretion of the trial court to permit the jury to review Rule

611(a) summary charts of admitted evidence during deliberations, provided the court determines that the charts are accurate and will aid in the jury's examination of the underlying evidence.  *See United States v. Boulware,* 470 F.3d 931, 935-36 (9th Cir. 2006) ("[W]e have elsewhere recognized a district court's discretion under Fed. R. Evid. 611(a) to admit summary exhibits for the purpose of assisting the jury in evaluating voluminous evidence."), *vacated on other* grounds, 552 U.S. 421 (2008); *United States v. Gardner*, 611 F.2d 770, 776 (9th Cir. 1980) (admission of summary chart of previously admitted evidence within court's discretion); *United States v. Johnson*, 460 F.2d 20, 22 (9th Cir. 1972) (admission of exhibit summarizing evidence previously admitted was nonprejudicial).

Other circuits echo that summaries of admitted evidence may permissibly be presented at trial and used by the jury during deliberations if the summary is accurate and aids the jury in examining the underlying evidence.  *See, e.g.*, *United States v. Keltner,* 675 F.2d 602, 606 (4th Cir. 1982) (summary chart was properly admitted into evidence because figures listed in chart were based on other evidence before the jury); *United States v. Scales*, 594 F.2d 558, 563-64 (6th Cir. 1979) (summaries of testimonial evidence designed "to aid the jury in its examination of the evidence already admitted" are authorized by Rule 611(a)).

Attachment A reflects the handwritten round sheets that were authored by Wesley Barta, an employee of Michael Marr.  Attachments B and C reflect the information on handwritten round sheets that were authored by defendants Javier Sanchez and Gregory Casorso.  The summary charts have three columns:  "Exhibit," "Date," and "Property Address."  The information entered into those columns corresponds to the  information in the underlying roundsheets.

Attachment D lists information contained in the checks that will be introduced at trial.  These checks were issued and paid either by a cooperating witness or by a defendant in this case to reconcile the amounts owed pursuant to multiple rigged properties.  The columns in the chart are as follows:  "exhibit," "date," "to," "from," the "amount to," and "amount from" CFUND.  All the information is drawn from the checks.

Attachment E sets forth the date of sale, the property address, county, the trustee sale number, and exhibit numbers identifying receipts of funds for certain properties.  The receipts of funds, which are the documents that contain false and misleading statements central to defendants' fraud scheme, list TS

1   numbers rather than property addresses.  Witness testimony, other documents, and the substantive mail-

2   fraud counts in the indictment, however, refer to properties by address, not TS number.  The summary

3   chart will help the jury and the witnesses match receipts of funds to the properties to which they relate.

4        A foundation for the admission of each chart and summary will be laid through the testimony of

5   various witnesses, who will testify that the charts and summaries accurately reflect information

6   contained in documents already in or to be admitted into evidence.  *See United States v. Lemire*, 720

7   F.2d 1327, 1349 (D.C. Cir. 1983); *United States v. Pollack*, 417 F.2d 240, 241 (5th Cir. 1969).

8        Notwithstanding the Court's authority to admit the summary charts under Rule 611(a), the

9   summary charts themselves are admissible under Federal Rule of Evidence 1006, which provides: "The

10   contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in

11   court may be presented in the form of a chart, summary, or calculation."

12        The purpose of Rule 1006 is to allow summaries when the volume of summarized documents is

13   so large as to make their use impractical or impossible; summaries may also prove more meaningful to

14   the judge and jury.  *United States v. Johnson*, 594 F.2d 1253, 1255 (9th Cir. 1979).  Although the

15   underlying materials must be admissible, they need not be admitted.   *Johnson*, 594 F.2d at 1257 n.6;

16   *United States v. Rizk*, 660 F.3d 1125, 1131 (9th Cir. 2011).  If admitted under Rule 1006, the summary

17   itself is substantive evidence and goes back to the jury.  *See Baker*, 10 F.3d at 1411; *United States v.*

18   *Wood*, 943 F.2d 1048, 1053 (9th Cir. 1991).

19        All the proposed summary charts are within the scope of Rule 1006.  The underlying documents

20   are voluminous and admissible.  In lieu of walking through nearly three hundreds of pages of documents

21   at trial, the jury will see the information reduced to a manageable number of pages.  All charts will be

22   authenticated and properly introduced at trial.  The charts accurately summarize the underlying

23   documents, which have already been produced to the defense.  Defendants will be free to cross-examine

24   the witnesses on any claimed inaccuracies.

25        While the charts meet the requirements of Rule 1006, the government seeks their admission

26   primarily under Rule 611(a) because they are "hybrids" – while they bear the characteristics of summary

27   charts admissible under Rule 1006, they are not being offered as substitutes for admission of the

28   underlying records, as with charts admitted under Rule 1006.  *See* 6 Jack B. Weinstein & Margaret A.

1  Berger, *Weinstein's Federal Evidence,* § 1006.04 (Joseph M. McLaughlin, ed., 2d ed. 2008) ("This

2  hybrid type of summary may not comply with the requirements of Rule 1006.  Nevertheless, it is

3  admitted into evidence when the underlying materials have been admitted into evidence and the

4  summary 'so accurately and reliably summarize[s] complex or difficult evidence' that the court admits it

5  into evidence to assist the jurors.") (quoting *United States v. Bray,* 139 F.3d. 1104, 1112 (6th Cir.

6  1998)); *see also United States v. Green,* 428 F.3d 1131, 1134-35 (8th Cir. 2005) (admitting Rule 611(a)

7  hybrid charts that fairly summarized voluminous evidence already introduced at trial under Rule 1006);

8  *Baker,* 10 F.3d at 1411-12 (clarifying that summary charts of admitted evidence are not Rule 1006

9  summary charts *as evidence*, but rather Rule 611(a) summaries of admitted evidence).  Here, the

10  government is also seeking to introduce the underlying records (such as the payoff checks) into

11  evidence.

12  **V.     Motion in Limine No. 5 – Business and Public Records Are Admissible under
            Fed. R. Evid. 902 and 803.**

13

14         The government intends to introduce documents that include business records, such as auction

15  paperwork, bank records, and FedEx records, as well as certified public records (specifically, DMV

16  records and incorporation records from the California Secretary of State).  As discussed below, the

17  government submits that these documents are all self-authenticating under Federal Rule of Evidence

18  902(4) as certified copies of public records or under Federal Rule of Evidence 902(11) as certified

19  domestic records of a regularly conducted activity that meet the requirements of Rule 803(6).  These

20  documents are also otherwise admissible under clearly established exceptions to the hearsay rule, such

21  as Rule 803(6) (Records of Regularly Conducted Activity), Rule 803(15) (Statements in Documents

22  That Affect an Interest in Property), and Rule 803(8) (Public Records).

23         A ruling on the government's motion *in limine* will result in a considerably shorter trial and will

24  eliminate the need to call several custodians of record to answer a substantial amount of routine and

25  repetitive questions over matters that are not in controversy.

26         On July 26, 2016, the government asked defendants to stipulate to the admission of these

27  records.  Sambat Decl. ¶¶ 4 and 13; Sambat Decl. Attachments F and G.  Defendants have not yet

28  agreed, precipitating the instant motion.  *Id.*  The government's request provided the bates range of the

1   documents in question, together with their respective certifications under Rule 902.  *Id*.  The underlying

2   documents have been produced in discovery.  *Id*. at ¶ 5.  The trial exhibits sought to be admitted are

3   specifically identified in Attachment G to this motion.  The corresponding 902(11) certifications and

4   certified public records are attached as Exhibits 1 through 21.

5   **A.    Auction Paperwork, Bank Records, and FedEx Shipping Records Are Properly
       Authenticated and Admissible Business Records.**

6

7           The auction paperwork, bank records, and FedEx shipping records the government intends to

8   introduce at trial are all accompanied by certifications establishing the foundation to admit these records

9   pursuant to Federal Rules of Evidence 803(6) and 902(11).  For business records to be admissible, "the

10  following foundational facts must be established through the custodian of records or another qualified

11  witness: (1) the records must have been made or transmitted by a person with knowledge at or near the

12  time of the incident recorded; and (2) the record must have been kept in the course of a regularly

13  conducted business activity."  *United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir. 1991).  The phrase

14  "other qualified witness" is "broadly interpreted to require only that the witness understand the record-

15  keeping system."  *Id*.  Thus, the Ninth Circuit has held that forms and documents are admissible when

16  qualified employees of the institution testified that "while they themselves had no personal knowledge

17  of the transactions or of the execution of the documents, the exhibits in question were kept in the regular

18  course of business and [ ] they related to the individual loans involved."  *Turner v. United States*, 202

19  F.2d 523, 525 (9th Cir. 1953).

20          The qualified witness need not be a current employee of the business in order to provide a

21  sufficient business-record foundation.  *United States v. Childs*, 5 F.3d 1328, 1334 (9th Cir. 1993)

22  (holding that testimony of former employees provided sufficient foundation when employees were

23  familiar with contents and preparation of the exhibits in question).  Moreover, there is no requirement

24  that the proponent establish when and by whom the documents were prepared as long as the witness can

25  testify that the documents were made "at or near the time" of the act or events it purports to record.

26  *United States v. Bland*, 961 F.2d 123, 127 (9th Cir. 1992); *Ray*, 930 F.2d at 1370-71.  Exhibits "can be

27  admitted as business records of an entity, even when that entity was not the maker of those records, so

28  long as the requirements of Rule 803(6) are met and the circumstances indicate the records are

1   trustworthy." *Childs*, 5 F.3d at 1333.  In *Childs,* the district court admitted documents, such as

2   certificates of title, purchase orders and odometer readings, which were kept by auto dealerships in the

3   regular course of their businesses, even though the dealerships did not themselves prepare the records.

4   *Id.* at 1332-33.  In upholding the admission of these documents as the dealerships' business records, the

5   Ninth Circuit noted that the witnesses from the dealerships testified that the documents in question were

6   kept in the regular course of business and that the dealerships relied on the documents in conducting

7   their business and had an interest in the reliability of the documents. *Id.  See also United States v.*

8   *Licavoli*, 604 F.2d 613, 622 (9th Cir. 1979) (appraisal by appraiser retained by insurance company

9   admissible as insurance company's business records).

10          A qualified witness does not have to testify at trial and instead can sign a certificate of

11   authentication for the business records.  These certificates are sufficient for business records to be

12   admitted.  Fed R. Evid. 803(6)(D) ("all these conditions are shown by the testimony of the custodian or

13   another qualified witness, or by a *certification* that complies with Rule 902(11) or (12)" (emphasis

14   added)); Fed. R. Evid. 902(11) (noting business records are admissible without authentication at trial if

15   accompanied "by a certification of the custodian or other qualified person" attesting that the records

16   satisfy the requirements of Rule 803(6)); *United States v. Towns*, 718 F.3d 404, 409 (5th Cir. 2013) ("A

17   proper foundation is laid for business records simply by an affidavit that attests to the requisite elements

18   of Federal Rule of Evidence 803(6)); *United States v. Yeley-Davis*, 632 F.3d 673, 680-81 (10th Cir.

19   2011) (agreeing with other circuits and holding that certificates of authenticity presented under Rule

20   902(11) are not testimonial and not subject to the confrontation clause).  *See Crawford v. Washington*,

21   541 U.S. 36, 56 (2003) (finding that most of the hearsay exceptions covered statements that were not

22   testimonial, in particular, business records or statements in furtherance of a conspiracy).

23                        **1.      Auction Paperwork**

24          The government intends to introduce auction paperwork, such as bid logs created by auctioneers

25   that tracked the bidders who qualified to bid at the public auction of a selected property, cashier's checks

26   used to purchase the properties, Receipts of Funds ("ROF"), Trustees' Deeds Upon Sale ("TDUS"),

27   trustees' letters, records of payments to mortgage holders, and records of mailings.  These records were

28   produced by the trustee companies that managed the foreclosure process for a selected property and by

1  the posting companies that were hired by the trustee to handle the sale of the foreclosed property at the

2  public auction.  These records were provided to defendants in discovery.  Sambat Decl. ¶ 5.

3  The auction paperwork listed in Attachment G is all properly certified by custodians asserting

4  that the records were made at or near the time of the occurrence of the matters set forth by or from

5  information transmitted by a person with knowledge of those matters, were kept in the course of

6  regularly conducted activity and were made by the regularly conducted activity as a regular practice, in

7  compliance with Federal Rules of Evidence 902(11) and 803(6).  As such, they are properly

8  authenticated and are admissible hearsay.

9  Additionally, the ROF and TDUS documents are separately admissible under Rule 803(15)

10  because they purport to establish or affect an interest in property and because the statements made in the

11  documents were relevant to the purpose of the documents.  Fed. R. Evid. 803(15).  *See also Kew v. Bank*

12  *of America, N.A.*, Case No. H–11–2824, 2012 WL 1414978, at *3, n.4 (S.D. Tex. Apr. 23, 2012) ("The

13  statement in the deed of trust identifying the amount of the mortgage loan is admissible under Federal

14  Rule of Evidence 803(15) as a statement in documents that affect an interest in property.").

### 2.    Bank Records

16  The government also plans to introduce bank records, such as signature cards and checks, into

17  evidence to show the payments the defendants made and received pursuant to the bid-rigging and mail-

18  fraud schemes.  The government provided these records to defendants together with their 902(11)

19  certifications in discovery.  Sambat Decl. ¶ 5.  Much like the auction paperwork, the bank records listed

20  in Attachment G are all properly certified by a custodian asserting that the records were made at or near

21  the time of the occurrence of the matters set forth by or from information transmitted by a person with

22  knowledge of those matters, were kept in the course of regularly conducted activity and were made by

23  the regularly conducted activity as a regular practice, in compliance with Fed. R. Evid. 902(11) and

24  803(6).  As such, they are properly authenticated and are admissible hearsay.

### 3.    FedEx Shipping Records

26  The United States intends to introduce into evidence FedEx shipping records.  The documents

27  are relevant to show that certain documents such as the ROFs, cashier's checks, and TDUSs were mailed

28  by a commercial carrier.  These records are specifically identified in Attachment G.  As with the auction

1    paperwork and bank records, these records were provided to defendants in discovery with 902(11)

2    certifications and are admissible as business records pursuant to Federal Rule of Evidence 803(6).  *See*

3    Sambat Decl. ¶ 5.

4          **B.      DMV Records and California Secretary of State Incorporation Records Are
                   Properly Authenticated and Admissible as Self-Authenticating Public Records**

5

6          The government plans to introduce certified DMV license printouts for defendants and

7    incorporation records from the California Secretary of State for Michael Marr's companies.  These

8    documents are admissible as self-authenticating public records pursuant to Rules 803(8), 902(1), and

9    902(4) of the Federal Rules of Evidence.  The documents are relevant to show the comparison of

10   defendants' known signatures on their driver's licenses with signatures that appear on checks and on the

11   ROFs.  The driver's license numbers are also relevant because the auctioneers recorded the name and

12   driver's license number for each bidder who qualified to bid on a particular property.  The DMV records

13   thus help to establish defendants' participation in the public real-estate foreclosure auctions.  The

14   incorporation records are relevant to show the owners of the entities that took title to the auctioned

15   properties as well as the defendants' known signatures.

16         The government produced a certified copy of defendants' driver's licenses and the incorporation

17   records in discovery.  Sambat Decl. ¶ 7.  These records are therefore admissible as self-authenticating

18   pursuant to Federal Rule of Evidence 902(1).  The DMV license printouts and incorporation records

19   bear the seal of the State of California and a signature purporting to be an execution or attestation.

20   These records are also admissible under the exception to the hearsay rule for public records pursuant to

21   Federal Rule of Evidence 803(8).  *United States v. Kuzmenko*, No. 2:12-cr-00062 JAM, 2014 WL

22   1334003, at *7 (E.D. Cal. April 2, 2014) (holding that driver's licenses are admissible under the public

23   records exception to the rule against hearsay); *United States v. Cuesta*, No. 1:06-CR-40 AWI (CVB

24   Mag, P484375) 2007 WL 2729853, at *15-16 (E.D. Cal. Sept. 19, 2007) (holding that public records

25   exception of Rule 803(8) applies to drivers' licenses), *aff'd*, 286 Fed. Appx. 358, 359 (9th Cir. 2008).

26   //

27   //

28   //

Hence, the Court should admit the certified copies of defendants' driver's licenses and the incorporation records into evidence as self-authenticating public records.

DATED:  August 3, 2016                         Respectfully submitted,


                                               _____/s/_____
                                               ALBERT B. SAMBAT
                                               Trial Attorney
                                               Antitrust Division
                                               U.S. Department of Justice