LAW OFFICE OF JONATHAN R. HOWDEN
Jonathan Howden (State Bar No. 97022)
Howdenlaw@gmail.com
201 California Street, Suite 450
San Francisco, CA 94111
Telephone: (415) 591-1109

BOERSCH SHAPIRO LLP
David W. Shapiro (State Bar No. 219265)
Dshapiro@boerschshapiro.com
Martha Boersch (State Bar No. 126569)
Mboersch@boerschshapiro.com
Lara Kollios (State Bar No. 235395)
Lkollios@boerschshapiro.com
1611 Telegraph Ave., Ste. 806
Oakland, CA 94612
Telephone: (415) 500-6640

Attorneys for Michael Marr

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>MICHAEL MARR, et al.,<br>Defendants. | Case No. CR 14-00580 PJH<br><br>**DEFENDANTS' JOINT OPPOSITION TO UNITED STATES' MOTIONS *IN LIMINE***<br><br>Hearing Date: April 19, 2017<br>Time: 2:30pm<br>Ctrm: 3, 3rd Floor<br><br>Trial Date: May 15, 2017 |

The defendants jointly respond to the United States' four motions *in limine* below.

**I. Defendants' Response to United States' Motion *in Limine* No. 1**

The United States includes four separate motions *in limine* under this number. At this time, defendants do not oppose the government's requests to admit evidence of the plea agreements of cooperating witnesses subject to certain procedures (No. 2) (since this Court has previously ruled that the jury is entitled to hear and understand the entire relationship that the witnesses have with the government); to exclude evidence of citizen complaints (No. 3); to exclude evidence regarding the disposition of non-testifying defendants (No. 4); or to exclude evidence of prior criminal convictions of Witnesses A, B, C, and D that are not admissible under Fed. R. Evid. 609(a). Defendant's reserve their right to object to any of the foregoing evidence if the evidence at trial reveals a foundation for objection.

As for the first motion *in limine* the government includes in No. 1, the defendants oppose the government's efforts to deny the defendants their right to present a defense to the charges in the indictment by precluding evidence or arguments on an element of the offense that is alleged in the indictment, that is, the reasonableness of the defendants' conduct. The indictment in this case, returned by the grand jury, *specifically alleges* that the conspiracy was "to suppress and restrain competition" in an "unreasonable restraint of interstate trade and commerce." Ind. ¶ 8. The grand jury further alleged that the defendants purchased "selected properties at public auctions *at artificially suppressed prices*." Ind. ¶ 10.d. (emphasis added). The indictment further alleges that the defendants purchased "selected properties at public auctions . . . at *non-competitive prices*." *Id.* ¶ 9 (emphasis added). The government suggests, Mot. at 2, that evidence of the effect of defendant's conduct on auction prices is not relevant, citing this Court's order in *Florida*. Mot. at 2. But that ruling is not binding here, and cannot be correct in this case given the allegations in this indictment. The government has alleged and must prove that the defendant's conduct effected auction prices and that their conduct was an unreasonable restraint on commerce. The defendants are entitled to present a defense to those allegations.

As we noted in our motion *in limine* seeking the admission of the testimony of Jeffrey S. Andrien, the defendants do not seek to "justify" their conduct. Rather, the defense is entitled to rebut the

specific factual allegations made by the government in their charging documents and in their proof at trial. In particular, the defense intends to disprove the grand jury's allegation that the defendants "artificially suppressed prices" at public auctions in Alameda and Contra Costa Counties.

The government's evidence and arguments in opening and closing statements at previous trials are replete with their theory of the case; that is, as alleged in the indictment, that the defendants suppressed prices at the public auction and then pocketed what otherwise would have gone to the beneficiaries by conducting the rounds. The government's calculus, argued repeatedly in other trials, is that the prices paid for the property at the rounds reflects the price that otherwise would have, and should have, been paid for the property at the public auction. The wholly speculative testimony elicited from the cooperating witnesses that, but for the secondary auctions, they would have bid more at the public auction, lacks any foundation and is, frankly, gratuitous. The government compounds this error by repeatedly arguing to the jury that the secondary auctions amount to theft and corruption. The government has gone so far as to argue that proof of the secondary auctions and the payments made between the bidders, by itself, provides an independent basis for convicting the defendants of bid rigging.

As we have previously noted, the defendants are guaranteed a "meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984). Any judgement in this case must be based upon a complete disclosure of the facts, rather than the partial and speculative evidence offered by the government. *Berger v. United States*, 295 U.S. 78, 88 (1935).

The government also claims that the defendants cannot offer evidence that the "victims" were negligent or acquiesced in the conduct of the defendants, again relying on this Court's order in *Florida*. Mot. at 1. But, again, because the government has alleged and repeatedly argued that the defendants' conduct at the secondary auctions amounted to theft or corruption, the defendants must be allowed to rebut that charge. To do so, the defense intends to offer evidence that trustees, representatives, auctioneers, beneficiaries, and even law enforcement, were aware of evidence of cooperation between

bidders at the public auctions and took no action to prevent or even to investigate these allegations. Again, this evidence is relevant to rebut evidence repeatedly presented by the government that the secondary auctions and payments associated with them constitute illegal activity. The evidence that the trustees and beneficiaries showed total indifference to these allegedly illegal activities is circumstantial evidence that they did not regard the activity as harmful or illegal, rebutting the government's theory. As such, we are entitled to present it to the jury as part of our factual defense.

**II. Defendants' Response to United States' Motion *in Limine* No. 2**

The defendants do not oppose this motion *in limine* at this time but reserve their right to cross-examine UCE-3322 about the civil lawsuits if the evidence at trial provides a foundation for such cross-examination under Fed. R. Evid. 608(b).

**III. Defendants' Opposition to United States' Motion *in Limine* No. 3**

Defendants oppose this motion at this time. The government proposes the wholesale admission of hundreds of exhibits under Fed. R. Evid. 902(11), 902(4) and/or 803(6). The government has not yet, however, provided the defense with copies of those marked exhibits, and instead has directed the defense to locate the documents amongst the terabyte of discovery produced in this case. The defendants will reconsider their position on specific exhibits once those exhibits have been produced to the defense.

**IV. Defendants' Opposition to United States Motion *in Limine* No. 4**

The defendants oppose the government's Motion *in Limine* No. 4. This Court must deny the motion for three reasons: 1) precluding the defense from cross-examining the cooperating witnesses about their bias in favor of the government as a result of benefits they may have received, or hope to receive, would violate the defendant's Sixth Amendment right to cross-examine the witnesses; 2) the bias of a government witness is always relevant, and the government provides no legal authority allowing the Court to prohibit defense questioning related to bias; and 3) the government's claim that it had "no legal authority" to take away the cooperating witnesses licenses or property is legally and factually unsupported and irrelevant.

The government asks this Court to prevent defense counsel from questioning the cooperating witnesses about the fact that the government has allowed witnesses to retain their real estate licenses, businesses, and allegedly bid-rigged properties. But the defense has a Sixth Amendment right to cross-examine witnesses to "reveal[] possible biases, prejudices, or ulterior motives as they may relate directly to issues or personalities in the case at hand." *Davis v. Alaska,* 415 U.S. 308, 316 (1974). The "partiality of a witness is subject to exploration at trial, and 'is always relevant as discrediting the witness and affecting the weight of his testimony.'" *Id.* (quoting 3A J. Wigmore, Evidence § 940, p. 775 (Chadbourn rev. 1970)).

Both the Supreme Court and the Ninth Circuit have emphasized that any benefits received, expected, or hoped for by a witness is a proper and critical issue to be explored by the defense on cross examination. *United States v. Sedaghaty*, 728 F.3d 885, 901 (9th Cir. 2013) (reversing conviction because of government failure to disclose benefits to testifying witness); *Silva v. Brown*, 416 F.3d 980, 986 (9th Cir. 2005) ("We cannot overemphasize the importance of allowing a full and fair cross-examination of government witnesses whose testimony is important to the outcome of the case" (quoting *Silva v. Woodford*, 279 F.3d 825, 854 (9th Cir. 2002)). Any benefit conferred upon a witness by the government, especially if that benefit is not explicitly promised, raises a "a particularly strong" inference that the witness's testimony has been influenced by the benefit. *Sedaghaty*, 728 F.3d at 901; *see also Napue v. Illinois*, 360 U.S. 264, 269 (1959) ("the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination."); *United States v. Schoenberg*, 396 F.3d 1036, 1042 (9th Cir. 2005) (defense must be able to cross-examine witness to explore any motive witness may have to testify falsely).

The government complains that it is powerless to confer the benefits received by the cooperating witnesses, *i.e.*, the maintenance of their real estate licenses and properties, but that complaint is unsubstantiated by any law or evidence and is incorrect. Conviction of a felony offense may be a ground for revocation or denial of a real estate license. Cal. Bus. & Prof. Code § 480; §10177(b). Here, however, the government has explicitly agreed in the plea agreements to inform other agencies, such as

the California Bureau of Real Estate, of the witnesses' cooperation, thereby assisting the witnesses in the retention of their licenses. *See, e.g., United States v. Keith Slipper*, No. 12-CR-0447 (Original Plea Agreement, Dkt. 7). As for the properties, the government can compel a cooperating defendant to return any ill-gotten property, either as restitution or as a voluntary forfeiture, and does so routinely. To the extent the government has not done that here, it is a benefit to the witness that may well be influencing the witness's testimony, and is therefore fairly the subject of cross-examination.

Finally, as the cases discussed above demonstrate, the defense is entitled to explore the witness's motivations in testifying, even if those motivations may be founded upon a mistaken belief or an unstated promise, and therefore the government's claimed inability to take a witness's license or property is irrelevant.

DATED: March 22, 2017

Respectfully submitted,

*/s/ Jonathan Howden*
JONATHAN HOWDEN
Counsel for Michael Marr

*/s/ Teresa Caffese*
TERESA CAFFESE
Counsel for Victor Marr

*/s/ Martha Boersch*
MARTHA BOERSCH
Counsel for Michael Marr

*/s/ Erik Babcock*
ERIK BABCOCK
Counsel for Gregory Casorso

*/s/ Dustin Gordon*
DUSTIN GORDON
Counsel for Javier Sanchez