LAW OFFICE OF JONATHAN R. HOWDEN
Jonathan Howden (State Bar No. 97022)
Howdenlaw@gmail.com
201 California Street, Suite 450
San Francisco, CA 94111
Telephone: (415) 591-1109

BOERSCH SHAPIRO LLP
David W. Shapiro (State Bar No. 219265)
Dshapiro@boerschshapiro.com
Martha Boersch (State Bar No. 126569)
Mboersch@boerschshapiro.com
Lara Kollios (State Bar No. 235395)
Lkollios@boerschshapiro.com
1611 Telegraph Ave., Ste. 806
Oakland, CA 94612
Telephone: (415) 500-6640

RIORDAN & HORGAN
Dennis P. Riordan (State Bar No. 69320)
dennis@riordan-horgan.com
Donald M. Horgan (State Bar No. 121547)
don@riordan-horgan.com
523 Octavia Street
San Francisco, CA 94102
Telephone: (415) 431-3472

Attorneys for Defendant
Michael Marr

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL MARR,<br><br>    Defendant. | Case No. 14-cr-0580-PJH<br><br>**DEFENDANT'S MOTION FOR RELEASE ON BAIL PENDING APPEAL**<br><br>Court: Hon. Phyllis J. Hamilton<br>Date: December 20, 2017<br>Time: 10:00 a.m.<br>Place: Courtroom 3, 3rd Floor |

## INTRODUCTION

Pursuant to 18 U.S.C. §3143(b), defendant Michael Marr moves the Court for an order granting his release on bail pending his appeal to the Ninth Circuit Court of Appeals of his criminal convictions in this matter.

Apart from findings that Mr. Marr would pose no risk of flight or danger to the public if released pending appeal — findings the Court has previously made in Mr. Marr's favor — relevant precedent requires that Mr. Marr present a "fairly debatable" appellate question in order to secure a release under the statute. *United States v. Handy*, 761 F.2d 1279 (9th Cir. 1985). The law is clear that an issue can be deemed "fairly debatable" even if the judge hearing the application for bail on appeal is convinced that the conviction in question will be affirmed by a reviewing court.

As Mr. Marr has demonstrated in his pre-trial motions and discusses further below, his appeal will raise a claim that meets, and indeed decidedly surpasses, the "fairly debatable" standard. Furthermore, if that claim succeeds, Marr's appellate claim will result in the reversal of the anti-trust offenses of which he stands convicted. Accordingly, the Court should issue an order permitting Mr. Marr's release on bail pending conclusion of his appeal from any custodial sentence the Court may impose, under the same conditions on which Marr is free pending sentencing.

## PREFATORY NOTE

Defendant Marr anticipates that his co-defendants Javier Sanchez and Gregory Casorso will file joinders in the present motion, as their evidence and arguments in support of an order of release pending appeal are, for all practical purposes, the same as Mr. Marr's. For that reason, the present motion will effectively serve as a request for release pending appeal for all three defendants.

## PROCEDURAL HISTORY

The Indictment in this matter, filed on November 19, 2014, charged defendants Michael Marr, Javier Sanchez, Gregory Casorso, and Victor Marr with two counts of violating the Sherman Act, 15 U.S.C. § 1, as well as one count of mail fraud. (Dkt. 1) The indictment alleged that the defendants participated in conspiracies to rig bids at foreclosure sales in Alameda and Contra Costa counties beginning as early as June 2008 through January 2011. (*Ibid*.)

On December 8, 2014, Mr. Marr was arraigned before Magistrate Judge Kandis Westmore. (Dkt. 6) On the same date, Marr posted a $250,000 personal recognizance bond to secure his release pending trial and agreed to comply with other conditions imposed by the Magistrate Judge. (*Id*; Dkt. 12.)

On September 8, 2016, the mail fraud count against all defendants was dismissed in response to a government motion informed, in turn, by a previous Court ruling. (*See* Order Granting Revised Motion to Dismiss, Dkt. 173.) Defendant Victor Marr's trial was later severed. (Pretrial Order No. 5, Dkt. 247).

Trial against defendants Michael Marr, Sanchez, and Casorso began on May 15, 2017. (Dkt. 258.) On June 2, 2017, the jury convicted all three defendants on both of the Indictment's remaining counts under the Sherman Act. (Dkt. 291). Mr. Marr was thereafter permitted to continue his release on his earlier-posted personal recognizance bond.

The Court conducted its initial sentencing hearing as to Mr. Marr on December 7, 2017. (Dkt. 384.) The Court will conclude that hearing and impose its judgment and sentence on December 20, 2017. Mr. Marr will pursue an appeal from that judgment and sentence based on the claim described in subsection I(C), below.

**I.   THE COURT SHOULD CONTINUE MR. MARR'S RELEASE UNDER THE PRESENT CONDITIONS PENDING APPEAL**

**A.   The Statutory Scheme**

18 U.S.C. § 3143(b) provides as follows:

> **Release or detention pending appeal by the defendant – (1)** Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds –
>
> > **(A)** by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
> >
> > **(B)** that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in —

>     **(I)** reversal;
>
>     **(ii)** an order for a new trial,
>
>     **(iii)** a sentence that does not include a term of imprisonment; or
>
>     **(iv)** a reduced sentence to a term of imprisonment less than the total of time already served plus the expected duration of the appeal process.
>
> If the judicial officer makes such findings, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c) of this title . . .

The Ninth Circuit addressed the "substantial issue" prong of the test for release pending appeal in *United States v. Handy*, 761 F.2d 1279 (9th Cir. 1985). In *Handy*, appellant was denied release by the district court which had rejected his suppression motion. The Ninth Circuit remanded the matter for reconsideration, defining a "substantial question" as a "fairly debatable question that calls into question the validity of the judgment." *Id*. at 1282-83.

> [P]roperly interpreted [under § 3143] "substantial" defines the *level of merit* required in the question presented and `likely to result in reversal or an order for a new trial' defines the *type of question* that must be presented.

*Handy,* 761 F.2d at 1281.

> As the D.C. Circuit stated in construing the meaning of 18 U.S.C. § 3143: [A] substantial question is one that is "fairly debatable," "fairly doubtful," or "one of more substance than would be necessary to a finding that it was not frivolous."

*United States v. Perholtz,* 836 F.2d 554, 555 (D.C.Cir 1987)(citing cases); *accord, United States v. Giancola*, 754 F.2d 898 (11th Cir.1985); *United States v. Randall*, 761 F.2d 122, 124-125 (2d Cir. 1985); *United States v. Miller,* 753 F.2d 19 (3rd Cir. 1985)(class of substantial questions includes one that is novel and not controlled by existing precedent).

The crux of the "substantial question" analysis is a reasonable basis for appeal, rather than a likelihood of success once the issues are fully developed:

> Congress did not intend to limit bail pending appeal to cases in

> which the defendant can demonstrate at the outset of appellate proceedings that the appeal will probably result in reversal or an order for a new trial . . . . [R]equiring the defendant to demonstrate to the District Court that its ruling is likely to result in reversal is tantamount to requiring the District Court to certify that it believes its ruling to be erroneous. Such an interpretation of the Act would make a mockery of the requirement of Fed.R.App.P. 9(b) that the application for bail be made.

*Handy*, 761 F.2d at 1280-81; *accord, Giancola, supra; Randall, supra.*

In *Handy,* the Ninth Circuit further expounded on the kind of issues that satisfy the "substantial question" requirement:

> The question may be "substantial" even though the judge or justice hearing the application for bail would affirm on the merits of the appeal. The question may be new and novel. It may present unique facts not plainly covered by the controlling precedents. It may involve important questions concerning the scope and meaning of decisions of the Supreme Court. The application of well-settled principles to the facts of the instant case may raise issues that are fairly debatable.

*Handy,* 761 F.2d at 1281 (emphasis added) (quoting *D'Aquino v. United States*, 180 F.2d 271, 272 (11th Cir. 1950) (Douglas, Circuit Justice). Stated otherwise, the district court should consider " 'whether there is a school of thought, a philosophical view, a technical argument, an analogy, an appeal to precedent or to reason commanding respect that might possibly prevail.' " *Handy*, 761 F.2d at 1281 (quoting *Herzog* v. *United States*, 75 S. Ct. 349, 351 (1955)).

### B. Mr. Marr Does Not Pose a Flight Risk or a Danger to the Community

18 U.S.C. § 3143(a) ("Release or detention pending sentence") expressly conditions a defendant's release pending sentencing upon judicial findings, by clear and convincing evidence, that the defendant is neither a risk of flight nor a danger to the community. *Ibid.*

As noted, after Mr. Marr posted bond prior to trial and agreed to comply with appropriate conditions, this Court permitted his release both pending trial and following the verdicts and pending sentence. In permitting Mr. Marr's release pending sentencing, the Court necessarily made the identical factual findings concerning absence of danger and flight risk that —together with a finding

concerning the presence of a substantial appellate issue, as discussed below—mandate his release pending appeal under § 3143(b)(1)(A) ("Release or detention pending appeal by the defendant"). *See* § 3143(a)(2)(B) (requiring the judicial officer to "find[] by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.")

Furthermore, the record firmly and independently establishes that Mr. Marr is neither a danger nor a flight risk. As to danger, and as set forth in the probation report, Mr. Marr has no prior criminal convictions and therefore plainly qualifies under the sentencing guidelines for a criminal history level of I. Nor is there any basis to conclude that Mr. Marr or his business has engaged in the offense conduct underlying the present convictions following the FBI's initial contact with Marr in 2011.

As to flight risk, Mr. Marr has faithfully appeared before the Court at all times required. In addition, as the probation report again makes clear, he has very extensive ties to the community, including the continuing operation of the business operation which constitutes the livelihood of Mr. Marr and his family.

In view of the present record and the Court's prior rulings, Mr. Marr has established by clear and convincing evidence that his release presents neither a risk of flight nor a danger to the community. (The same is true for defendants Sanchez and Casorso.) That being so, the question is not whether this Court at this stage believes the defendant will prevail on appeal, but rather whether the issue he raises is of the type that renders "fairly debatable" the likelihood of his success on appeal.

**C.    Defendant Marr Will Raise a Substantial, "Fairly Debatable" Issue on Appeal**

Mr. Marr will argue on appeal that he is entitled to a new trial because the jury failed to find an essential element of the offense—namely, the unreasonableness of his conduct. Prior to trial he requested that this Court give an instruction on reasonableness. This Court rejected his request, relying on the Ninth Circuit's 1972 decision in *United States v. Manufacturers' Ass'n*, 462 F.2d 49 (9th Cir. 1972).

This Court held that it was bound by the decision in *Manufacturers' Ass'n*. At the same

time, this Court also recognized that that decision is open to question on appeal.

> You know, I'm -- I'm a trial court judge. I'm bound by the precedent set by the Court of Appeals. If, indeed, your argument is persuasive, it's going to be persuasive with the Court of Appeals who can determine for themselves if their precedent is no longer good law. I don't think it's appropriate for me – for me to ignore what is a -- exactly on point with respect to the due process argument that you're raising and to determine that it's no longer good law because of intervening Supreme Court cases that don't effectively or expressly overrule it. So I'm going to follow *Manufacturers'*, as I did previously. Your motion's denied.

(April 29, 2017 Tr. at 15-16.)

The core holding of *Manufacturers'* was that there are in fact two separate offenses prohibited by the Sherman Act, one for *per se* violations and one for rule-of-reason violations. 462 F.2d at 52. The latter offense has an element of unreasonableness, the former does not. Therefore, the Ninth Circuit held, when a defendant is charged with a *per se* violation, the prosecution need not allege or prove unreasonableness. It is simply not an element of the offense.

Since *Manufacturers'* was decided however, there have been numerous developments in the case law, both regarding substantive antitrust law and due process law. As this Court implicitly recognized, those developments have eroded the foundations of *Manufacturers'*.

### 1. Developments in Antitrust Law

Antitrust law has changed since 1972, when the criminal conduct proscribed by the Sherman Act constituted no more than a misdemeanor. Those changes undermine the holding of *Manufacturers'*.

*First*, as an initial matter, it is worth remembering that *Manufacturers'* has no support in the actual text of the statute. The Sherman Act, by its plain terms, defines one offense, not two. *See* 15 U.S.C. § 1. In recent years, the Supreme Court has made clear that when Congress means to define two offenses in a single statutory section, it usually does so explicitly, such as by numbering different offenses. *See Loughrin v. United States*, 134 S. Ct. 2384, 2391 (2014). When Congress gives no such textual indication, courts should assume that a statute defines a single offense. *See McNally v. United States*, 483 U.S. 350, 358-59 (1987). There is nothing in the text of the Sherman Act

suggesting the Congress actually meant to create two separate offenses.

*Second*, *Manufacturers'* analysis of the meaning of the *per se* rule has been repeatedly contradicted by subsequent Supreme Court cases. The *Manufacturers'* Court insisted that the occasional "restatement" of the *per se* rule as a presumption was merely a "pedagogic instrument" and "not . . . a presumption." 462 at 52. That is a neat rhetorical trick, but over and over again the Supreme Court has said that the *per se* rule does, in fact, operate as a conclusive presumption. *See, e.g.*, *NCAA v. Univ. of Oklahoma*, 468 U.S. 85, 104-07 (1984); *Rice v. Norman Williams, Inc.*, 458 U.S. 654, 659 n.5 (1982); *Continental T. V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 50 (1977).

It is no surprise that all of these cases are civil cases. In civil cases, it is perfectly legitimate to employ a conclusive presumption. But in criminal cases, under the Due Process Clause as well as the Sixth Amendment, it is not.

*Third*, the idea that there are only two offenses under the Sherman Act has been utterly repudiated by the Supreme Court. The Supreme Court first noted that there is a third category of "quick-look" cases between *per se* and rule-of reason, and it has since clarified that there is a "spectrum" of different cases. *California Dental Ass'n. v. FTC*, 526 U.S. 756, 771, 779-80 (1999). "The truth is that our categories of analysis of anticompetitive effect are less fixed than terms like '*per se*,' 'quick look,' and 'rule of reason' tend to make them appear." *Id*. at 779.

Put differently, as the Supreme Court has explained, there is only one legal offense defined by the Sherman Act. That offense covers a wide variety of business arrangements. Some of those business arrangements require extended market analysis to determine their reasonableness, some do not. Over time, the common law of antitrust will develop and make the inquiry easier. But at bottom, the core legal definition is the same, and there are not really different "categories" of antitrust offenses. "[T]here is generally no categorical line to be drawn between restraints that give rise to an intuitively obvious inference of anticompetitive effect and those that call for more detailed treatment. What is required, rather, is an enquiry meet for the case, looking to the circumstances, details, and logic of a restraint." *Id*. at 780-81.

The claim that there are two different and distinct offenses defined by the Sherman Act, one

with an element of unreasonableness of restraint, the other a *per se* offense lacking that element, is simply false in light of recent antitrust cases.

Finally, the government is effectively estopped from claiming that the offenses of which Marr stands convicted lack an element of unreasonable restraint by the positions it has taken in indicting and prosecuting all of the Sherman Act cases that have come before this Court. That unreasonableness of restraint is a necessary element of a criminal violation of Section 1 is reflected in its inclusion as an element in the very offenses charged as an indictment in this case. Indeed, this Court has recited unreasonableness of restraint as a necessary element whenever it has taken a guilty plea from a defendant to the Count One bid-rigging charge.

### 2. Developments in Due Process Law

The law of Due Process has also changed since 1972. *Manufacturers'* was decided shortly after *In re Winship*, 397 U.S. 358 (1970), which marked the infancy of modern due process doctrine. *Winship* was the first case where the Supreme Court squarely held that the federal Due Process Clause requires proof of every element beyond a reasonable doubt. That right works in tandem with the Sixth Amendment right to a jury trial on each element (as well as the right to grand jury determination on each element).

But the most important conceptual developments came later, in the line of cases running beginning (fitfully) with *Mullaney v. Wilbur* and then running through *Gaudin*, *Apprendi*, and *Blakely*. What these cases stand for ultimately is the proposition that legislatures and courts cannot evade the constitutional requirements simply by employing clever labels. The constitution requires that every element of a criminal offense be submitted to a jury and proven beyond a reasonable doubt. What the *Apprendi* line of cases demonstrates is that those requirements cannot be avoided simply by taking an element and calling it something else.

The prosecution cannot avoid the constitution simply by labeling something an affirmative defense, *Mullaney v. Wilbur*, 421 U.S., 684 (1975), or a question of law, *United States v. Gaudin*, 515 U.S. 506 (1995), or a statutory sentencing enhancement, *Apprendi v. New Jersey*, 530 U.S. 466 (2000), or a guidelines factor, *Blakely v. Washington*, 542 U.S. 296 (2004). As the Court said in

*Apprendi*, "labels do not afford an acceptable answer." 530 U.S. at 494 (internal quotation marks omitted).  Rather, as *Apprendi* doctrine makes clear, the analysis is functional rather than formal.  Any fact that is necessary to impose punishment is, for constitutional purposes, an element of the offense.  Any fact that is necessary to impose punishment must be submitted to the jury and proven beyond a reasonable doubt.

Viewed against that backdrop, *Manufacturers'* is obviously suspect.  For starters, the core holding of *Manufacturers'* rests heavily on an explicit exercise in labeling.  The *Manufacturers'* Court held that, although the *per se* rule has been repeatedly and explicitly described as a conclusive presumption, it is not actually a conclusive presumption.  That is the judicial equivalent of a declaration that the naked emperor is fully clothed.

But the related procedural point is that, even if there were two distinct sets of substantive standards for two distinct sets of cases, someone needs to make a judgment which standard is appropriate.  It is not always clear whether a case is *per se* or rule-of-reason—to the contrary, in nearly every civil antitrust case, the plaintiffs claim that the case is a *per se* violation, while the defendants claim that the case must be analyzed under the rule of reason.  The reason this is frequently disputed is because the line is muddy.  "'[T]here is often no bright line separating per se from Rule of Reason analysis,' since 'considerable inquiry into market conditions' may be required before the application of any so-called 'per se' condemnation is justified." *California Dental*, 526 U.S. at 779 (quoting NCAA, 468 U.S. at 104 n.26).

Someone needs to decide which side of the line a case falls on—or rather, where on the sliding scales a case falls.  In civil cases, that someone can be a judge.  What the *Apprendi* line of cases makes clear is that in criminal cases that someone must be the jury, and the jury must make its determination beyond a reasonable doubt.  The prosecution cannot avoid all this simply by asserting "this is a *per se* case."

In short, even if *Manufacturers'* were correct as a matter of antitrust law—which it is not—it would not avoid the *Apprendi* problem.  It still depends on a factual determination as to what type of case this is, and therefore what type of analysis is appropriate.  That factual determination is

9   MOTION FOR RELEASE ON BAIL
PENDING APPEAL
Case No.: 14-cr-0580-PJH

necessary to the imposition of punishment. Therefore, it is a determination that must be made by the jury, beyond a reasonable doubt. The ultimate inquiry in any antitrust case is whether the alleged restraint on trade is unreasonable. That must be found by the jury. It is fine as a shorthand to say that *per se* violations are always unreasonable, but then the jury must find that the conduct is in fact a *per se* violation. Clever labeling at most succeeds in re-framing the question. But ultimately the question must be decided in accordance with the Constitution's due process requirements for criminal cases.

## CONCLUSION

These are admittedly complex and weighty questions. There is no area of law that is both more important and more conceptually difficult than *Apprendi* doctrine, and for that matter, the Supreme Court's case law interpreting the Sherman Act has been largely defined by its instability. But the bottom line is that under current law, *Manufacturers'* is not correct—it has been thoroughly undermined by intervening Supreme Court cases. At a minimum, these questions are fairly debatable, and Mr. Marr is therefore entitled to bail while the Ninth Circuit considers them.

For the foregoing reasons, Mr. Marr requests that the Court issue an order continuing his release, and that of defendants Sanchez and Casorso, under the present conditions for the duration of their Ninth Circuit appeals.

Dated: December 13, 2017

Respectfully submitted,
DENNIS P. RIORDAN
DONALD M. HORGAN
RIORDAN & HORGAN

 */s/ Dennis P. Riordan*
Dennis P. Riordan

BOERSCH SHAPIRO LLP

 */s/ Martha Boersch*
Martha Boersch

LAW OFFICE OF JONATHAN R. HOWDEN

 */s/ Jonathan R. Howden*
Jonathan R. Howden

Attorneys for Defendant Michael Marr